Index No. . 08 cv 4856 (LTS)(JCF)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

JOSE ROBLES,

Plaintiff,

-against-

GODDARD RIVERSIDE COMMUNITY CENTER, INC.; STEPHAN
RUSSO; STEPHEN ADLER; RICHARD BURGHEIM; EVELYN
GRANT; STANLEY HECKMAN; KAYALYN A. MARAFIOTI; BETSY
NEWELL; LAURA PAGE; SUSAN RICHMAN; ERIC ROSENFELD;
DANIEL SIFF; HOWARD STEIN; and PETER WORKMAN,

Defendants.

## AMENDED COMPLAINT

JOHN C. KLOTZ (JK4162)
Attorney for the Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600
johnklotz@johnklotz.com

# TABLE OF CONTENTS

FACTUAL ALLEGATIONS COMMON TO ALL COUNTS ........................................... 1

   A.   Nature Of Case ............................................................................................. 1

   B.   Jurisdiction .................................................................................................. 2

   C.   Venue .......................................................................................................... 2

   D.   Parties And Related Entities ....................................................................... 2

   E.   Plaintiff's employment............................................................................... 2

   F.   GRCC's stated employment policies ......................................................... 4

      (1)   Written policies ................................................................................ 4

      (2)   Pension and Medical benefits .......................................................... 4

      (3)   Seniority........................................................................................... 4

      (4)   Housing ............................................................................................ 5

   G.   Unblemished record of performance .......................................................... 5

   H.   Russo's tenure ............................................................................................ 5

   I.   Dismissal .................................................................................................... 5

   J.   Plaintiff's EEOC Filings and Receipt of Right to Sue Letter. ................... 7

   K.   Grievance Procedure .................................................................................. 8

COUNT ONE: Federal Age Discrimination Violation.................................................. 9

COUNT TWO: Federal Racial Discrimination Violation ............................................ 9

COUNT THREE: Federal Civil Rights Violation ...................................................... 10

COUNT FOUR: N.Y. State Age Discrimination Violation ....................................... 11

COUNT FIVE: N.Y. State Racial Discrimination Violation...................................... 12

COUNT SIX: Breach of Contract.............................................................................. 12

TABLE OF EXHIBITS

A   GRCC Employment Practices

B   Purported letter of Resignation

C   EEOC Complaint

D   Amended EEOC Complaint

E   EEOC Right To Sue Letter

F   Housing Court Stipulation

JOHN C. KLOTZ (JK4162)
Attorney for the Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600
johnklotz@johnklotz.com

UNITED STATES DISTRICT COURT                    Index No. 08 cv 4856
SOUTHERN DISTRICT OF NEW YORK                              (LTS)(JCF)

JOSE ROBLES,

                                        Plaintiff,

                                                        **AMENDED COMPLAINT**

                    -against-
                                                        **PLAINTIFF DEMANDS
                                                        JURY TRIAL**

GODDARD RIVERSIDE COMMUNITY CENTER, INC.;
STEPHAN RUSSO; STEPHEN ADLER; RICHARD
BURGHEIM; EVELYN GRANT; STANLEY HECKMAN;
KAYALYN A. MARAFIOTI; BETSY NEWELL; LAURA
PAGE; SUSAN RICHMAN; ERIC ROSENFELD; DANIEL
SIFF; HOWARD STEIN; and PETER WORKMAN,

                                        Defendants.

_____

        Plaintiff, JOSE ROBLES, complaining of defendants by his attorney, JOHN C.

KLOTZ, respectfully alleges for his AMENDED COMPLAINT:

                    **FACTUAL ALLEGATIONS COMMON TO
                            ALL COUNTS**

**A.    <u>Nature Of Case</u>**

        1.    For This is a civil action arising (1) under the Age Discrimination in

Employment Act, 29 U.S.C. §621 *et seq.,* in which the plaintiff alleges he was

unlawfully removed from his position as Superintendent of Phelps House by the

defendant in violation of 29 U.S.C. §623(a)(1), Section 296(1) of the New York State

Executive Law (Human Rights Law), and Title 8, Chapter 8-107(1)(a) of the New York City

Administrative Code; (2) claims of racial discrimination pursuant to 42 U.S.C. 2000e *et

seq*; (3) civil rights violation pursuant to 42 U.S.C. § 1983 and (4) supplementary state

law claims.

**B.     Jurisdiction**

2.     This Court has jurisdiction over the federal claims in this action under 29 U.S.C. §626(c) and 28 U.S.C. §1331, and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

**C.     Venue**

3.     Venue is proper in this district pursuant to the provisions of 28 U.S.C. § 1392(b)(2) because all of the events or omissions giving rise to this claim, for which relief is sought, occurred in the Southern District of New York.

**D.     Parties And Related Entities**

4.     The plaintiff is, and was at all times relevant hereto, an individual resident of the State of New York, a citizen of the United States and a person within the meaning of 29 U.S.C. §630(a).

5.     On information and belief, defendant GODDARD-RIVERSIDE COMMUNITY CENTER, INC. (hereinafter "GRCC") is a corporation conducting business in the City, County and State of New York, with its principal office and place of business at 593 Columbus Avenue, New York, New York

6.     On information and belief, GRCC employs more than 100 individuals.

7.     In expending its annual budget in excess of $10 million, GRCC consumes products and services in interstate commerce and its actions affect interstate commerce.

8.     At all pertinent times, commencing in 1998, defendant STEPHAN RUSSO ("RUSSO") was, and is, the executive director of GRCC with his office at 593 Columbus Avenue.

7. On information and belief, at pertinent times, each of the defendants listed on Schedule One, annexed, were members of the Board of Directors of GRCC (hereinafter "GRCC Board").

**E.     Plaintiff's employment**

9.     Plaintiff was born on April 23, 1945 in the Dominican Republic immigrated to the United States at age 17. He is presently 63 years of age and is a person of color.

10.   Plaintiff is a citizen of the United States.

11.  Prior to 1987, for a period of some years, plaintiff was employed as building superintendent by T.U.C. Management Company, Inc. ("TUC") which provides real estate management services in the City of New York.

12.  Phelps House is a federally assisted senior citizen residence located at 595 Columbus Avenue in New York County.

13.  At all pertinent times, GRCC was the operator of government financed programs at Phelps House and actually maintained and managed Phelps House with TUC as it managing agent.

14.  In or about 1986, Mr. Bradford Winston, a real estate manager for TUC, requested plaintiff to apply for the position of superintendent at Phelps Houses.  After his interview, plaintiff declined the position as superintendent.

15.  In 1987, Mr. Winston again pressed plaintiff to interview with GRCC for the position of superintendent at Phelps Houses.

16.  Among other things, on behalf of TUC and GRCC, Mr. Winston promised plaintiff better benefits than union contract benefits if he accepted the position as superintendent of Phelps House for GRCC.

17.  Thereafter, plaintiff accepted that position and executed various documents which he cannot locate but which he reasonably believes constituted a written contract of employment.

18.  On information and belief, said documents are in possession of defendant GRCC and/or TUC.

19.  As a result, in or about 1987, plaintiff was assigned by TUC to work for GRCC and he was, at that time, entitled to all the benefits and employment of an employee of GRCC including inter alia, immediate contributions of 12% of his annual salary into the GRCC pension plan and medical insurance benefits.

20.  For the initial four years of his employment at Phelps House, his pay checks were issued by TUC, but thereafter, he was paid directly by GRCC.

21.  At the time his paycheck was switched to GRCC, he was given a copy of GRCC "PERSONNEL PRACTICES," a copy of which is annexed hereto as Exhibit A.

**F.     GRCC's stated employment policies**

*(1) Written policies*

22.  Plaintiff relied upon the aforesaid "PERSONNEL PRACTICES" which constituted written conditions of his employment.

23.  Among the terms of his employment were grievance procedures which were made available to employees for any dispute with GRCC's management.

24.  The procedures specifically provide for a multi-step process, the final step of which is an appeal to the Board of Directors, and the decision of the Board of Directors shall be final.

*(2) Pension and Medical benefits*

25.  Plaintiff was entitled to a pension contribution from GRCC equal to 12% of his pay, and he received the same from the first year of his employment at GRCC.

26.  After five years employment, the rights to the pension fund became vested.

27.  On information and belief, in or about 1994, subsequent to his retention as superintendent of Phelps House, the pension rights of new employees were changed. The contribution was reduced to 6% and no contribution was made for the first year of employment.

28.  In addition to his pension benefit, plaintiff received fully paid, comprehensive medical insurance paid for by GRCC.

*(3) Seniority*

29.  Among the further provisions of the PERSONNEL PRACTICES was a provision for seniority preference:

> "SENIORITY
>
> In filling vacancies priority shall be given to present employees whose qualifications would be sufficient to justify promotion. The employer recognizes and reaffirms the practice of promotion from within."
> Personnel Practices, p. 3 (EX. A., p. 5)

### *(4) Housing*

30.  As an incident to his employment, plaintiff was entitled to occupancy of a two bedroom apartment at Phelps Houses, which, on information and belief, was worth $3,000 a month, or $36,000 annually.

### G.    Unblemished record of performance

31.  Throughout his entire tenure at GRCC, plaintiff diligently performed all his duties and had an unblemished record, having never been at any time subject to disciplinary action.

32.  In 2005, plaintiff received an award and bonus for outstanding achievement.

### H.    Russo's tenure

33.  In or about 1998, defendant RUSSO was appointed executive director of GRCC.

34.  As Executive Director, Mr. Russo has responsibility for overseeing the multi-million dollar budget of GRCC.

35.  On information and belief, upon assuming his position as executive director Russo embarked upon a policy of forcing out of GRCC, senior employees.

36.  On information and belief, Mr. Russo's intent in adopting said policy was to (a) reduce costs for GRCC; (b) create a more junior staff that would be dependent on Mr. Russo; and (c) erase the "institutional memory" of Mr. Russo's predecessor as Executive Director.

### I.    Dismissal

37.  In early October, plaintiff had a discussion with Mr. Russo and others about missing alcohol from a "book storage room" which was under the primary control of the GRCC's Development Office.

38.  Prior to being notified that liquor was missing from the Development Office's book storage room, plaintiff was unaware that liquor was being stored there.

39.  When Mr. Russo voiced concern about the missing alcohol, plaintiff pointed out to him that primary responsibility for the book storage room was the Development

Office. Plaintiff suggested because the amount missing was significant, and Mr. Russo was concerned, that he should call the police.

40.  On October 11, 2007, Russo demanded plaintiff's resignation. He delivered to plaintiff a letter falsely claiming that plaintiff had resigned and demanding that plaintiff sign it. A copy of that letter is annexed as Exhibit B.

41.  On information and belief, the reasons that Russo attempted to force the plaintiff to resign were (a) to deny him his rights to seek a review of his decision (b) deny him the right to his severance pay of 13 weeks and (c) deny him the right to seek unemployment compensation.

42.  Upon plaintiff's refusal to sign the letter, Mr. Russo summarily discharged him.

43.  Because of plaintiff's seniority at GRCC, if plaintiff was discharged without cause plaintiff was entitled to 13 weeks pay. The letter offered plaintiff no such severance. In addition, as a senior employee, plaintiff is entitled to 12% annual pension contribution. Any successor would be entitled to no contribution his first year and 6% in each year thereafter. By seeking to replace plaintiff with a newer, younger employee, GRCC is seeking to save many thousands of dollars.

44.  At the time he was discharged, Plaintiff was 62 years of age and is now virtually unemployable for a comparable position if forced to seek work with this discharge hanging over plaintiff's head. In four years, plaintiff will be eligible for Social Security, but the amount of plaintiff's Social Security pension will be dramatically reduced because of potentially four (4) years of unemployment.

45.  Plaintiff has also received a "Cobra" notice concerning cancellation plaintiff's health insurance. Plaintiff will be forced to pay many thousands of dollars a year for medical coverage; plaintiff will not be eligible for Medicare until plaintiff reaches retirement age.

46.  There is a pattern of discharge by GRCC and Mr. Russo of senior employees. On information and belief, at least three individuals over the age of forty were discharged upon expiration of their funded programs and not offered other opportunities

for positions with GRCC which were filled with younger workers in violation of the GRCC stated seniority policies.

47.  Plaintiff believes that plaintiff has been discriminated against because of age and will be replaced by a younger individual who will be entitled to less than plaintiff is earning from GRCC in terms of wages and benefits.

48.  Plaintiff believes that Mr. Russo, Executive Director of GRCC, personally, and individually, made the decision to discharge him.

49.  Plaintiff further learned after plaintiff was discharged that at the "book sorting" events in the "book storage room," conducted by the predominantly white members of the Development Office, a great deal of alcohol was consumed.

50.  At no time, under any circumstance did plaintiff ever remove alcohol from the book storage room.

51.  On account of  the fact that the Development Office and the donors it solicits are predominantly white, plaintiff believes that one motivation for plaintiff's firing was to protect white employees of the Development Office, who were primarily responsible for the activities of the book sorting room, and lay the blame on the nearest available minority member.

52.  Plaintiff had no supervisory authority for the conduct of the Development Office in the book storage room.

**J.    Plaintiff's EEOC Filings and Receipt of Right to Sue Letter.**

53.  On or about November 29, 2007, the plaintiff filed a complaint of age discrimination against the defendants with the United States Equal Employment Opportunity Commission New York District Office ("EEOC"). See Complaint, Exhibit "C," annexed.

54.  Thereafter, on or about January 2, 2008, plaintiff filed an amended complaint with the EEOC which added and explained his complaint of racial discrimination. See Amended Complaint, Exhibit "D," annexed.

55.  On or about March 5, 2008, the EEOC issued a "Notice of Right to Sue" to plaintiff and mailed a copy of the same to him. See Exhibit "E" annexed.

56.  This action is commenced within 90 days of the plaintiff's receipt of Exhibit E.

57.  In order to tarnish plaintiff's otherwise impeccable reputation, defendants have spread unfounded rumors about him including false accusations that he was responsible for the missing alcohol.

58.  As a result plaintiff has been humiliated and suffered grievous mental anguish.

**K.    Grievance Procedure**

59.  Plaintiff attempted to invoke the grievance procedure allowed him by the terms of his employment but was frustrated in exercising the same by reason of his not being informed of any misconduct, never receiving any answer to his appeal and never having any opportunity to present evidence to GRCC Board.

60.  He was subsequently informed that his grievance had been denied.

61.  According to EXHIBIT A, the final responsibility for his dismissal and the termination of his grievance rests with the GRCC Board and the GRCC Board decision is final.

62.  The defendants sought and obtained his eviction from his home to which plaintiff consented provided it was without prejudice to his right to seek remedies in any forum but the New York City Housing Court. See Exhibit F, annexed.

63.  On information and belief, in seeking to fill the vacancy created by his dismissal, defendants are offering candidates to replace plaintiff 50% of plaintiff's compensation and less than 50% when taking reduced pension benefits into account.

64.  Defendants STEPHEN ADLER; RICHARD BURGHEIM; EVELYN GRANT; STANLEY HECKMAN; KAYALYN A. MARAFIOTI; BETSY NEWELL; LAURA PAGE; SUSAN RICHMAN; ERIC ROSENFELD; DANIEL SIFF; HOWARD STEIN; PETER WORKMAN are each member of the Executive Committee of the GRCC Board of Directors and include among them the members of the GRCC  Personnel Committee and shall hereinafter be referred to as "Board defendants.".

65.  As such, each of them participated in the decision to discharge plaintiff even though there was no evidence of misconduct by him.

66.  .In so participating they never informed plaintiff of any allegations of misconduct on his behalf, never supplied him with any rebuttal to the information he supplied them on his grievance appeal.

67.  In deciding to discharge plaintiff, each of the Board defendants exercised independent discretion and were under no compulsion to so act.

## COUNT ONE: Federal Age Discrimination Violation

68.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "67" hereof as though set forth fully at length herein.

69.  By reason of their aforesaid acts, the defendants have discriminated against the plaintiff because of his age, in violation of 29 U.S.C. §623(a)(1).

70.  Plaintiff has been damaged in the sum of (a) $600,000 for loss of income, pension rights, medical benefits and loss of his dwelling and (b) $2,000,000 for humiliation and emotional distress.

71.  By reason of the premises aforesaid, plaintiff is entitled to judgment in the sum of $2,600,000 from defendant GRCC together with interest and the costs and disbursement of this action including attorney fees

72.  By reason of the premises aforesaid, plaintiff is entitled to punitive damages in such amount as may be determined.

## COUNT TWO: Federal Racial Discrimination Violation

73.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "67" hereof as though set forth fully at length herein.

74.  Plaintiff brings this Count pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §§ 704(a) and 706(g) (42 U.S.C. § 2000e-3(a), 42 U.S.C. § 2000e-5(g)), for damages to compensate him for the economic loss and other damages caused by defendant's unlawful employment practice committed against plaintiff because plaintiff was a member of protected class as a person of color.

75.  The actions of the defendants in scape-goating the plaintiff as a person of color in order to protect the parties responsible for the missing alcohol who were the white

officials of the Development Office, constituted racial discrimination in violation of 42 U.S.C. 2000e *et seq.*

76.  Plaintiff has been damaged in the sum of (a) $600,000 for loss of income, pension rights, medical benefits and his dwelling and (b) $2,000,000 for humiliation and emotional distress.

77.  By reason of the premises aforesaid, plaintiff is entitled to judgment against defendant GRCC in the sum of $2,600,000 together with interest and the costs and disbursements of this action including attorney fees

78.  By reason of the premises aforesaid, plaintiff is entitled to punitive damages in such amount as may be determined.

### COUNT THREE: Federal Civil Rights Violation

79.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "67" and "74" through "78" hereof as though set forth fully at length herein.

80.  This Count is brought pursuant to 42 U.S.C. § 1983.

81.  On information and belief, by reason of the millions of dollars in contracts and grants which GRCC receives from city, state and federal agencies, GRCC is required by Executive Order Number 10557 to refrain from discrimination on account of race.

82.  Defendants were at all times acting under color of law in that GRCC is the recipients of governmental aid for programs which included commitments to not discriminate on account of race.

83.  Irrespective of any specific requirement of Executive Order 10557, defendants were further acting under color of law by reason of the receipt and administration of funds from federal, state and local government which they administered on behalf of the various branches of the government.

84.  Plaintiff, as superintendent of Phelps House, was involved in programs funded by such federal, state and city assistance.

85.  By reason pf the premises aforesaid, the defendants, acting color of law, have denied the plaintiff of his property.

86.  By reason of the premises aforesaid, plaintiff has been discriminated against on account of his race.

87.  Plaintiff has been damaged by defendants' aforesaid action in violation of 42 U.S.C. § 1983 in the sum of (a) $600,000 for loss of income, pension rights, medical benefits and loss of his dwelling and (b) $2,000,000 for humiliation and emotional distress.

88.  Each of the Board defendants and Russo aided and abetted GRCC in the discrimination alleged.

89.  By reason of the premises aforesaid, plaintiff is entitled to judgment in the sum of $2,600,000 against all defendants together with interest and the costs and disbursement of this action including attorney fees.

90.  By reason of the premises aforesaid, plaintiff is entitled to punitive damages in such amount as may be determined.

## COUNT FOUR: N.Y. State Age Discrimination Violation

91.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "67"  hereof as though set forth fully at length herein.

92.  This court has supplemental jurisdiction of this Count pursuant to the provisions of 28 U.S.C. § 1367.

93.  This claim is brought for age pursuant to the provisions of N.Y. S. Executive Law § 297(9) on account of age discrimination in violation of N.Y. S. Executive Law § 296.

94.  The Board defendants and Russo aided and abetted the violations of N.Y. State law alleged.

95.  By reason of the premises aforesaid, plaintiff is entitled to judgment in the sum of $2,600,000 against all defendants together with interest and the costs and disbursement of this action including attorney fees.

### COUNT FIVE: N.Y. State Racial Discrimination Violation

96.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "67" and  "74" through "77" hereof as though set forth fully at length herein.

97.  This court has supplemental jurisdiction of this Count pursuant to the provisions of 28 U.S.C. § 1367.

98.  This claim is brought for racial discrimination  pursuant to the provisions of N.Y.S. Executive Law § 297(9)  on account of age discrimination in violation of N.Y.S. Executive Law § 296.

99.  The Board defendants and Russo aided and abetted the violations of N.Y. State law alleged.

100.By reason of the premises aforesaid, plaintiff is entitled to judgment in the sum of $2,600,000 against all defendants together with interest and the costs and disbursement of this action including attorney fees.

### COUNT SIX: Breach of Contract

101.Plaintiff repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "67" hereof as though set forth fully at length herein.

102.This court has supplemental jurisdiction of this Count pursuant to the provisions of 28 U.S.C. § 1367.

103.By reason of the terms of his employment, plaintiff was entitled to 13 weeks pay upon his discharge without cause.

104.The defendants have refused to pay him his termination pay.

105.The defendants' discharge of plaintiff without cause violated the terms of his employment and caused damages of not less than $600,000.

106. By reason of the premises aforesaid, plaintiff is entitled to judgment against GRCC in the sum of $600,000 together with interest and the costs and disbursement of this action.

WHEREFORE, plaintiff demands judgment in the sum of $600,000 damages for loss of property, $2,000,000 for his humiliation and mental anguish and punitive damages in such sum as may be determined together with the costs and disbursements of this action including reasonable attorney fees.

Dated: New York, New York
   July 18, 2008

            s/John C. Klotz
            JOHN C. KLOTZ (JK4162)
            Attorney for the Plaintiff
            350 Fifth Avenue, Suite 4810
            New York, New York 10118
            (212) 630-2600

## SCHEDULE OF BOARD DEFENDANTS

| | | |
|---|---|---|
| Stephen Adler | 285 Riverside Dr | New York, NY 10015 |
| Richard Burgheim | 230 Central Park West | New York, NY 10024 |
| Evelyn Grant | 130 Malcolm X Boulevard | New York. NY 10026 |
| Stanley Heckman | 101 Central Park West | New York. NY 10023 |
| Kayalyn A. Marafioti | 225 Central Park West | New York. NY 10024 |
| Betsy Newell | 62 East 83rd Street | New York. NY 10028 |
| Laura Page | 180 Warren Street | Brooklyn, NY 10028 |
| Susan Richman | 333 East 69th Street | New York. NY 10021 |
| Eric Rosenfeld | 149 West 87th Street | New York, NY 10024 |
| Daniel Siff | 9 Rivercrest Road | Bronx, NY 10471 |
| Howard Stein | 1158 Fifth Avenue | New York, NY10029 |
| Peter Workman | 60 Gramercy Park | New York. NY 10010 |



**GODDARD RIVERSIDE COMMUNITY CENTER**

## GODDARD-RIVERSIDE COMMUNITY CENTER
593 Columbus Avenue, New York, N.Y. 10024

# STATEMENT OF PERSONNEL PRACTICES

Approved by Board of Directors - June 18, 1999
Effective - June 18, 1999

## STATEMENT OF PERSONNEL PRACTICES

593 COLUMBUS AVENUE NEW YORK, NEW YORK 10024-1998 PHONE: 212-873-6600 FAX: 212-595-6498  http://www.goddard.org



GODDARD NEIGHBORHOOD CENTER 1901-1959  ▪  RIVERSIDE COMMUNITY HOUSE  1889-1959
PIONEER YOUTH OF AMERICA  ▪  CHILD STUDY ASSOCIATION OF AMERICA/CAMP WEL-MET

**EXHIBIT A: GRCC Personnel Practices**                    **A-1**

# TABLE OF CONTENTS

Page

Preamble .............................................. 1

Personnel Committee ...................... 1

Management Rights......................... 2

Employment Procedures ............... 2-4

    Job Descriptions .......................... 2

    Evaluations .................................... 2

    Job Classification ......................... 3

    Seniority ........................................ 3

    Posting............................................ 3

    Employment Agreement ............ 3-4

    Probationary Period .................... 4

    Agency Year ................................. 4

Working Conditions ......................... 5

    Salary Structure ........................... 5

    Job Expenses................................. 5

Separation of Staff............................ 5-7

    Resignation ................................... 5-6

    Dismissals ..................................... 6

    Reorganization &

        Retrenchment ......................... 6

    Severance Pay ............................... 6

    Grievance Procedures ................. 6-7

Hours of Work and Leave  ............. 7-10

    Regular Hours .............................. 7

Page

    Compensatory Time ..................... 7-8

    Vacation Leave .............................. 8

    Holidays......................................... 8-9

    Discretionary Leave ..................... 9

    Emergency Leave.......................... 9

    Sick Leave ..................................... 9

    Borrowing Leave for serious illness ........... 9

    Leave Without Pay........................ 10

    Family Leave ................................. 10

    Conferences ................................... 10

    Jury Duty ....................................... 10

Employee Benefits ............................. 11-12

    Retirement..................................... 11

    Tax Deferred Annuity .................. 11

    Health Insurance .......................... 11

    Unemployment Insurance  ......... 12

    Disability Insurance ..................... 12

    Worker's Compensation  ............. 12

Career Development............................. 12

APPENDICES:

A: EEO Policy Statement................................. 13

B: Harrassment-Free Workplace Policy ....... 15

C: Drug-Free Workplace Policy ..................... 18

D: Smoke-Free Workplace Policy.................. 19

PAGE 1

# GODDARD-RIVERSIDE COMMUNITY CENTER

## STATEMENT OF PERSONNEL PRACTICES

### PREAMBLE

Goddard-Riverside Community Center is a multi-program, decentralized agency providing services for individuals and groups ranging from pre-school age children through senior citizens. Some of these programs are funded through contributions, fees, and public monies raised and administered directly by the Community Center. Others are funded through public monies administered by the City and a citywide coalition of sponsors. Goddard-Riverside currently sponsors two such programs, namely Day Care and Head Start. These programs are covered by personnel policies and practices determined by the central policy body of the funding source, and through collective bargaining. Copies of the respective personnel policies and practices, and collective bargaining agreements are on file in the offices of the directors of each program, as well as in the Community Center's personnel office. These documents were reviewed in the course of revising the policies and practices which follow. Every effort was made to achieve as much consistency and uniformity as possible between these policies and practices and those of the publicly funded programs.

The Personnel Practices in this document apply specifically to personnel employed, supervised and paid directly by Goddard-Riverside Community Center, except for those employees covered by separate collective bargaining agreements. In cases where those collective bargaining agreements are silent on a particular issue, these Personnel Practices shall govern.

### PERSONNEL COMMITTEE

There shall be a standing personnel committee of the Board of Directors responsible for the development of personnel practices and policies. The Committee shall ensure the participation of the staff in the formulation of these practices and policies by consultation with a Staff Personnel Practices Advisory Committee. Ultimate responsibility for approval of personnel practices rests with the Board of Directors.

PAGE 2

## MANAGEMENT RIGHTS

The Board of Directors of Goddard-Riverside Community Center has the right to determine program and policy in accordance with the purpose set forth in the Certificate of Incorporation, and to retrench and reorganize its activities and staff at its discretion, and such decisions are not to be subject to the grievance procedure. The Board of Directors has the ultimate right to promulgate working rates and procedures related to hiring, laying off, promoting, assigning duties to, transferring, disciplining and dismissing employees; to determining the extent and scope of each job and making and changing work assignments; and to carrying out customary functions of management.

## EMPLOYMENT PROCEDURES

The Board of Directors shall be responsible for hiring the Executive Director, who in turn shall be responsible for employment of staff. The Executive Director may consult with the Board in selecting employees for key positions. In cases where the Executive Director wishes to employ a child, spouse or parent of either an employee or member of the Board of Directors he must consult with the Board. Any action taken by the Board Personnel Committee in these matters must be reported to the Board of Directors for ratification at its next meeting.

## JOB DESCRIPTION

There shall be a job description for every position in the agency outlining responsibilities, lines of supervision, qualifications and special conditions when appropriate.

The job description shall be used with a prospective employee as a basis for detailed discussion in considering employment.

## EVALUATIONS

The job description shall also be used by supervisors as a basis for annual written review with staff of job performance.

Evaluation should be an ongoing process, with regular meetings between supervisor and employee. There should be written reports of incidents of negative performance or problems, as well as of extraordinary good performance.

PAGE 3

JOB CLASSIFICATION

Jobs shall be classified in three ways:
1. By function

-Executive and Administrative Personnel
-Program Personnel
-Office Personnel
-Maintenance and Kitchen Personnel

2. By proportion of time worked

-Full time
-Part time

3. By length of assignment

-Regular   12 months a year

-Seasonal   full time but short term, i.e. summer, fall, etc.

-Session   specific number of program sessions and/or hours worked in a given week & for a limited time period

-Term   a specific period of time usually related to a special project being funded through a special grant

-Temporary   short, but indefinite time not to exceed the probationary period for the functional classification

SENIORITY

In filling vacancies priority shall be given to present employees whose qualifications would be sufficient to justify promotion. The employer recognizes and reaffirms the practice of promotion from within.

POSTING

Notice of job openings for regular full-time and part-time positions shall be posted in locations available to all staff at the same time notices are circulated to outside employment sources.

EMPLOYMENT PROCEDURES

At the time of employment, the employee shall be given a copy of the payroll action form stating terms of his/her employment, together with a job description for the position and a copy of this Statement of Personnel Practices.

PAGE 4

The payroll action form shall include:

-date of employment
-job title
-salary
-job classification
-date probationary period ends
-when appropriate, length of assignment if job of limited duration
-special considerations appropriate to a specific job

The form shall be signed by the employee and supervisor, or if necessary the Executive Director, with a copy retained by each.

## PROBATIONARY PERIOD

There shall be a probationary period of three (3) months for all staff. The supervisor, after consultation with the employee and Executive Director, may extend the probationary period by one additional period.

During this period, employment may be terminated at any time by either employee or employer without giving advance notice.

Unless the supervisor notifies the employee in writing, the probationary period will automatically be satisfactorily completed.

Vacation leave will be earned but may not be taken during the probationary period, except in special cases which must be approved at time of employment by the Executive Director.

## AGENCY YEAR

The fiscal year of the Agency is from July 1 through June 30. It shall also be considered the employment year and the time period for computing all types of leave, unless otherwise dictated by the funding period of a specific project.

PAGE 5

## WORKING CONDITIONS

### SALARY STRUCTURE

A salary structure shall be established for all positions. The salary ranges should reflect the following factors:

> Function of job
> Type of work done
> Amount of responsibility
> Educational background and/or equivalent experience required

The salary structure should be systematically reviewed by the Board Personnel Committee at least every two (2) years and revised as needed to keep the Agency salary plan in line with comparable organizations, to the extent possible.

It is the intent of the Board of Directors to give annual increments, within the financial capabilities of the Agency.

### JOB EXPENSES

Employees shall be reimbursed for <u>authorized</u> expenses incurred in performance of work and travel for the Agency, but not going to and from work.

-Employees using public transportation shall be reimbursed at actual cost.
-Employees using their own vehicles shall be reimbursed for gas plus tolls.
-Employees shall be reimbursed at actual cost for luncheon and dinner meetings and other expenses required and authorized by the Executive Director as part of the job.

## SEPARATION OF STAFF

### RESIGNATIONS

All regular administrative and program staff resigning from their positions shall give at least one month's advance notice in writing to remain in good standing and to be entitled to all benefits. Longer notice is expected from administrative and program staff when circumstances permit. Office and maintenance personnel shall give at least two weeks notice.

PAGE 6

An employee who fails to give minimum notice forfeits rights to unused vacation pay. The Agency will endeavor to make allowances in cases where adequate notice cannot be given. Such special cases must be approved by the Executive Director.

## SEPARATIONS

### DISMISSALS

Except in cases of misconduct, a regular administrative or program employee has the right to receive at least one month's notice from the supervisor of intent to dismiss. The supervisor shall be expected to give longer notice when circumstances permit, and may give one month's salary in lieu of notice. For office and maintenance personnel the supervisor shall give either two weeks notice or two weeks' salary in lieu of notice. The Executive Director may determine the terms of dismissal in cases judged to constitute misconduct. The Executive Director should place a written notation of reason for dismissal in the employee's Personnel File. Reasons for dismissal should be made clear to the employee as part of the regular supervisory process.

### REORGANIZATION AND RETRENCHMENT

In the event the Agency finds it necessary to reorganize or retrench, and such organization or retrenchment results in elimination of certain jobs, regular employees about to be dismissed shall be given as much notice as possible, but not less than one (1) month, except in cases where funding sources are cut too suddenly to allow such notice.

### SEVERANCE PAY

In dismissals caused by reorganization that eliminates certain jobs or by retrenchment necessitated by insufficient funds, regular employees subject to no other cause for dismissal shall be entitled to severance pay of one weeks' salary for each of the first three (3) years of employment; two (2) weeks' salary for each of the fourth (4th) through eighth (8th) year of employment to a maximum of thirteen (13) weeks' salary. Severance pay shall not be applicable to employees whose terms of employment are for special projects known to be for a fixed period or to be self-limiting in nature.

### GRIEVANCE PROCEDURES

Every effort should be made to resolve grievances between parties in conflict. Any grievance or dispute between an employee and the agency which cannot be solved by informal conferences shall be discussed between the employee and (1) his or her immediate supervisor. If not resolved, (2) then it is reviewed with the Executive Director. If not resolved at this level, (3) it is reviewed with Board Personnel Committee.

PAGE 7

If the above procedure proves unsatisfactory to the employee, the employee may submit a written request to the President of the Agency requesting a confidential interview with the President or Vice-President, and Chairman of Board Personnel Committee. If no solution is reached the matter shall be submitted to the Board of Directors with the recommendation of the above group. The Board of Directors' decision shall be final.

## HOURS OF WORK AND LEAVES

### REGULAR HOURS

Regular hours of work shall be 35 hours a week, not including lunch/supper hour.

Administrative and staff meetings, supervisory conferences and preparation are included in the work week.

#### Administrative and Program Staff:

Shall be expected to meet the demands of their particular job assignments when this requires exceeding 35 hours per week. If, however, they are required to work beyond their normal hours compensatory time shall be given as soon as feasible.

#### Office and Maintenance Staff:

Shall be expected to be willing to meet occasional emergencies or special events requiring some over-time or weekend work, with assurance that the firm policy of the agency is to avoid over-time work except under special circumstances. If, however, they are required to work beyond their normal hours compensatory time shall be given as soon as feasible.

### COMPENSATORY TIME

For over-time work authorized in advance by their supervisor equivalent time off shall be granted and shall be taken within a maximum period of three months except as noted below. Scheduling of compensatory time must be approved by supervisor in advance. In general compensatory time shall not be taken in conjunction with vacation.

PAGE 8

Exception: <u>Maintenance/Kitchen Personnel</u>:

Any time over eight (8) hours per day shall be paid at time and a half. However, if a maintenance/kitchen employee works more than eight (8) hours per day or forty (40) hours per week and compensatory time off is not given, the employee shall be paid at the rate of time and a half for all hours in excess of eight (8) hours per day or forty (40) hours per week.

## VACATION LEAVE

All regular staff shall accrue vacation at the rate of twenty (20) working days per year during the first five (5) years of employment, and twenty-five (25) working days per year thereafter.

Vacation leave for regular staff employed less than full-time shall be pro-rated according to classification on the allowance stipulated above.

Employees terminating their employment either by resignation or dismissal shall receive payment for that year's earned accrued vacation leave.

Schedules for vacation leave shall be determined by each Program Director in accordance with needs of the agency with the understanding that every reasonable effort shall be made to meet the special requests of employees. Employees shall submit their requests as early as possible.

Vacation leave must be taken during the fiscal year in which it is accrued, or it is lost. Only in cases where the Executive Director has approved deferral of part of an employee's vacation can an employee carry over part of earned vacation leave to the following fiscal year.

Vacation leave will be earned but may not be taken during the probationary period, except in special cases which must be approved at time of employment by the Executive Director.

## HOLIDAYS

All employees shall be entitled to twelve holidays per year, selected from among the following at the beginning of each year:

| | | |
|---|---|---|
| New Year's Day | Independence Day | Thanksgiving Day |
| Martin Luther King | Labor Day | Friday After Thanksgiving |
| Lincoln's Birthday | Columbus Day | Christmas Eve |
| Washington's Birthday | Election Day | Christmas Day |
| Memorial Day | Veterans Day | New Year's Eve |

Dates of celebrations shall conform to dates established by the State of New York. When a holiday falls on a Saturday and State and/or City offices do not close on either the preceding Friday or following Monday the Executive Director may designate alternate dates to be observed.

Schedule of specific dates for each year will be issued annually prior to July 1st.

Agency may, at discretion of Executive Director, close on other holidays.

## DISCRETIONARY LEAVE

Regular full-time employees shall be authorized to take up to five (5) days of paid discretionary leave annually, for personal business and religious observances. Dates shall be subject to agency requirements when feasible.

Regular part-time employees shall be authorized to take paid discretionary leave based on formula of percentage of time worked to proportion of regular full-time schedule.

## EMERGENCY LEAVE

Regular employees shall be allowed to take up to four (4) days of paid emergency leave for a death in the immediate family.

## SICK LEAVE

Regular full-time employees shall be entitled to fifteen (15) days sick leave annually with pay, cumulative from prior years to sixty (60) days in any one employment year. Payment of salary for absences due to illness in excess of maximum may be made at discretion of the Executive Director in consultation with the Board.

Regular part-time employees shall be entitled to paid sick leave based on a formula of percentage of time worked in proportion to regular full-time work schedule.

Employees terminating their employment, by resignation or dismissal shall not receive payment for unused accumulated sick leave.

## BORROWING LEAVE FOR SERIOUS ILLNESS

Regular full-time or part-time employees who are unable to work due to serious illness, and whose accumulated sick leave is exhausted, may apply to the Executive Director to borrow up to 15 days of sick leave. Such borrowing of leave will only be considered in cases of documented serious illness, and borrowed leave must be paid back over the following two years.

PAGE 10

LEAVE WITHOUT PAY

Leave without pay may be requested for special purposes such as job related education, short-term assignment on a special project, or illness when all other forms of leave for the purpose have been exhausted. Such leave must be approved by the Executive Director.

A request for leave without pay assumes that the individual intends to return to work. If the leave without pay is for longer than one month it shall be granted with the understanding that the particular job may not be held open unless there has been agreement reached prior to granting the leave that the specific job will be available provided the employee returns to work within the stipulated time. The decision to grant such leave shall take into consideration length of employment, work performance, prior leave record, work load, and the needs of the agency.

FAMILY LEAVE

An employee who has been employed for a year or longer, and who works a schedule of 1,250 hours or more per year] shall be entitled to up to three months of leave without pay to care for a newborn or adopted child, to care for a family member who is seriously ill, or due to their own serious illness, which prevents them from performing their job. An employee who is granted such leave shall be entitled to return to their job or an equivalent position, provided the job or project is not defunded during the leave. Health insurance, if the employee is enrolled, will be continued without additional cost during such leave. The details of this Family Leave policy, including how to apply, are contained in the Family and Medical Leave Policy, which is an appendix to this document.

Any longer leave, either without pay, or from accumulated sick and/or vacation leave, must be approved by the Executive Director.

CONFERENCES

The Executive Director and Supervisory staff shall try to enable employees to attend job related conferences without loss of pay and with expenses paid within budgetary limitations.

JURY DUTY

Employees required to serve on jury duty, or who are subpoenaed by Federal, State, or City governments, as witnesses in court, shall not suffer loss of earnings or other benefits. If at the time an employee is called for jury duty, his/her department head finds it imperative that the employee be at work, the department head may request that the employee request a postponement which will be sent by the department head on company stationery.

PAGE 11

## EMPLOYEE BENEFITS

In cases where there is any conflict between the employee benefits described in this manual and the actual retirement plan document or health insurance plan document, the plan document will govern.

## RETIREMENT

All employees are covered by the Federal Social Security Retirement Plan which is required --- one-half contributed by employer and one-half by employee. (FICA)

In addition, regular full-time and part-time employees, who work a minimum of 1,000 hours a year and who are not covered by a separate collective bargaining agreement, and whose coverage by such collective bargaining agreement was not predated by their participation in the pension plan, are covered by a supplemental retirement plan developed by Goddard-Riverside. Participation in the plan is mandatory for eligible staff after one full year of service if the employee is at least 21 years of age. Vesting in the plan occurs after five years of employment. The employer contributes to this plan on behalf of eligible employees.

A description of the plan, in booklet form will be made available to the employees at time of eligibility. A full description of the plan is on file in the Personnel Office of the agency and will be shown to anyone upon request.

## TAX DEFERRED ANNUITY

The agency provides the opportunity for staff to participate in a voluntary tax deferred annuity program. The staff member signs an agreement authorizing the employer to deduct a stipulated amount from each paycheck to be deposited in a tax deferred annuity account in the staff members name.

## HEALTH INSURANCE

A group plan with the option to choose among insurance carriers for hospital, major medical and dental coverage is provided. These carriers include both an HMO type option and a reimbursement option, the details of which are described in booklets from each carrier.

As changing health insurance costs dictate, the agency may substitute different coverage for above with consultation with staff before the change is made.

A descriptive booklet and certificate will be given to employee at time of enrollment.

## UNEMPLOYMENT INSURANCE

All employees are covered by unemployment insurance in accordance with the laws of the State of New York. Expense of coverage is paid by employer.

## DISABILITY INSURANCE

All employees are covered by disability insurance. Expense for the coverage is paid by the employer.

## WORKER'S COMPENSATION

All employees are covered by worker's compensation in accordance with the laws of the State of New York.

## CAREER DEVELOPMENT

Agency should encourage staff to pursue opportunities beyond where they are currently and, within budgetary limits, the agency should provide financial assistance.

Page 13

# EQUAL EMPLOYMENT OPPORTUNITY PROGRAM

## POLICY STATEMENT

As Executive Director of Goddard-Riverside Community Center, I affirm that the policy stated herein and the Equal Employment Opportunity Program (EEOP) executed simultaneously herewith reflect this Agency's attitude and its intention to:

1. Review all aspects of employment policies and practices as they relate to selection criteria, recruitment, hiring, promotion, transfer, disciplinary procedures, separations, benefits, agency-sponsored training, and other terms and conditions of employment.

2. Determine whether any of the above practices and policies reflect past discrimination and are preventing women, minorities and/or the disabled from entry into or advancement in employment in accordance with their skill and availability.

3. Recruit, hire, and promote all job classifications without regard to race, creed, color, national origin, sex, age, disability, marital status, sexual orientation, affectional preference or citizenship status, and base all employment decisions so as to further the principles of equal opportunity.

4. Insure that promotion decisions and other personnel actions, i.e., compensation benefits, transfers, terminations, agency sponsored training, social and recreational programs will be administered without regard to race, creed, color, national origin, sex, age, disability, marital status, veteran status, sexual orientation, affectional preference or citizenship status.

5. Provide pursuant to the Vocational Rehabilitation Act of 1973, equal employment opportunity as set forth above to qualified disabled or handicapped persons.

This agency will make pertinent portions of the EEOP available to employees and applicants for employment in the Personnel Office.

EEO Policy Statement - Page 2                                          Page 14

I have appointed George Kaler EEO Officer.  He will have overall responsibility for the establishment and implementation of the EEOP and will report to me, at least quarterly, on problems and progress in providing equal employment.

This endeavor, and its goal of achieving and maintaining equal employment opportunity for all persons, is of the highest priority for this Agency and the City, and has the full and positive support of the management of the Agency.

Stephan Russo
Executive Director

Page 15

## HARASSMENT-FREE WORKPLACE POLICY

**Statement of policy.** To fulfill the mission of Goddard Riverside Community Center ("Goddard Riverside") we treat people as our most important asset and expect Goddard Riverside employees, Board members and volunteers to observe the highest standards of conduct. In keeping with those values, Goddard Riverside has long been committed to maintaining a work environment that is free of discrimination, including harassment, on the basis of any legally protected status. Accordingly, Goddard Riverside will not tolerate any form of harassment by or against any Goddard Riverside employee, Board member or volunteer by or against anyone, including other Goddard Riverside employees, Board members or volunteers, vendors, or recipients of services. All Goddard Riverside employees, including supervisory and management personnel, Board members and volunteers are expected to avoid any behavior or conduct that could reasonably be interpreted as harassment. No manager or supervisor has any authority whatsoever to engage in the conduct prohibited by this policy. All Goddard Riverside employees, Board members and volunteers are also expected to make it known promptly, through the avenues identified below, whenever they experience or witness offensive behavior.

**Conduct prohibited** by this policy includes all unwelcome conduct, whether verbal, physical or visual, that is based upon a person's protected status under law, such as sex, race, ancestry, religion, national origin, age, disability, medical condition, marital status, veteran status, citizenship status, sexual orientation, or other protected group status, or upon the protected status of the person's relatives, friends or associates.

**Conduct forbidden** by this policy also specifically includes, but is not limited to: (a) epithets, slurs, negative stereotyping, or intimidating acts that are based on a person's protected status; and (b) written or graphic material circulated within or posted within the workplace that shows hostility toward a person because of his or her protected status.

**Sexual harassment** is an issue that deserves special mention. Guidelines issued by the Equal Employment Opportunity Commission ("EEOC") define sexual harassment as including "unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature" not only when the conduct is made as a condition of employment ("quid pro quo" harassment), but also when the conduct creates an intimidating, hostile or offensive working environment.

**Sexual conduct prohibited** by this policy is not limited to explicit demands for sexual favors. It also may include such actions as (1) sex-oriented verbal kidding, teasing or jokes; (2) continued or repeated offensive sexual flirtations, advances or propositions; (3) continued or repeated verbal
Harassment-Free Workplace Policy - Page 2

Page 16

abuse of a sexual nature; (4) graphic or degrading comments about an individual or his or her appearance; (5) the display of sexually suggestive objects or pictures; (6) subtle pressure for sexual activity; and (7) unwelcome physical contact such as patting, hugging, pinching, or brushing against another's body. The fact that co-workers once had some sort of consensual relationship does not and will not excuse harassing conduct that occurs after the consensual relationship ends. Impermissible sexual harassment can be directed at either men or women and may include allegations of same sex harassment.

Goddard Riverside takes special note that many service recipients or renters of space are disabled or especially vulnerable, whether or not deemed competent under the law. While Goddard Riverside acknowledges that there may be circumstances where a consensual sexual relationship is acceptable, Goddard Riverside will usually regard a consensual sexual relationship between an employee, Board member or volunteer and a recipient of service or renter as grounds for termination of employment (or, as applicable, severing the relationship of the offender from Goddard Riverside).

**Reporting violations of this policy**. If you experience or witness any conduct that you believe may be inconsistent with this policy, Goddard Riverside encourages and expects you to notify immediately your department head, who shall report the information immediately to George Kaler, Ellen Eisenman, or Mimi Peters-Davis. If you are not comfortable discussing the problem with your department head, you should bring your concerns to George Kaler, Goddard Riverside's Associate Director and EEO Officer, or to Ellen Eisenman or Mimi Peters-Davis, both Associate Directors. Please take every step you can to make sure that your concerns are known to management. Under no circumstances, however, are you required to report the harassment to a supervisor who you believe is responsible for harassing activity. You should also understand that allegations of harassment raise serious work-place issues and are to be made in a responsible manner.

**Investigations.** When a complaint of discrimination, including harassment, is brought to the attention of Goddard Riverside, it will be promptly and fully investigated. Special privacy safeguards will be applied to the investigation to the extent consistent with our fair and thorough investigation of the allegations; complaints will be handled on a confidential "need to know" basis, and only those persons necessary to the investigation will know the identities of the reporting party and the person whose behavior is the subject of the complaint. The person whose behavior is the subject of the complaint will be informed of the complaint during the investigation.

**Punishment.** If a complaint is found to have merit, Goddard Riverside will take appropriate disciplinary action against the offender, up to and including dismissal from employment (or, as applicable, severing the relationship of the offender from Goddard Riverside). After investigating complaints of harassment under this policy, Goddard- Riverside may impose discipline for inappropriate conduct that comes to Goddard Riverside's attention, without regard to whether the conduct constitutes a violation of law or even a violation of this policy. All employees, Board members and volunteers will be required to cooperate fully in any investigation of a complaint under this policy.

Harassment-Free Workplace Policy - Page 3

Page 17

**Retaliation**.   Any employee who in good faith reports discrimination, including harassment, or cooperates in the investigation of a complaint will be protected from retaliatory action.  Any retaliation against a complaining employee by anyone will be grounds for discipline, up to and including immediate dismissal (or, as applicable, severing the relationship of the offender from Goddard Riverside).

We trust that all employees, Board members and volunteers of Goddard Riverside will continue to act responsibly to establish and maintain a pleasant working environment, free of discrimination, for all.

Page 18

# DRUG-FREE WORKPLACE POLICY

The unlawful manufacture, distribution, dispensation, possession or use of a controlled substance is strictly prohibited in any of Goddard Riverside Community Center's facilities.

Due to the detrimental impact of alcohol on an individual's ability to work effectively, and the personal health risks and legal ramifications posed by alcohol abuse, the use or possession of alcohol in the workplace is also strictly prohibited.

Employees violating the prohibition against manufacture, distribution or dispensation of controlled substances may be subject to immediate discharge.

Employees violating the prohibition against possession or use of drugs or alcohol may be subject to immediate suspension without pay. If upon investigation the employee is determined to have a drug or alcohol addiction problem, referral to a counseling or rehabilitation program will be offered. Refusal to enroll in a counseling or rehabilitation program may be grounds for immediate discharge.

Employees are required to notify the Employer of any criminal drug statute conviction for a violation occurring in the workplace no later than 5 days after such conviction.

This policy does not apply to the proper use of prescription drugs. Also, an exception to this policy is alcohol served at social functions which have been authorized by the Employer.

Page 19

## SMOKE-FREE WORKPLACE POLICY

Goddard-Riverside strongly supports the right of all its members to work in a smoke-free environment.


Under New York law, and due to the detrimental effects of smoking and second-hand smoke on the personal health of the smoker and those around them - smoking is prohibited in any of the Goddard-Riverside Community Center facilities.


Stephan Russo
Executive Director



# GODDARD RIVERSIDE
# COMMUNITY CENTER

October 11, 2007

Jose Robles
Superintendent
Goddard Riverside Community Center
Phelps House
595 Columbus Avenue
New York, NY 10024

Dear Jose:

As we discussed, I accept your resignation effective October 11, 2007. The agency will continue your salary through December 15, 2007. You will be paid for any remaining vacation days earned through that date. You also waive and release the Agency from any and all claims, proceedings and suits arising out of or relating to your employment here and termination thereof.

Please sign, date and return a copy of this letter to indicate your agreement to the foregoing.

Thank you for the services you have performed as the Superintendent of Phelps House.

Sincerely,

Stephan Russo
Executive Director


AGREED:

_____
Jose Robles

Dated: October,   2007


593 COLUMBUS AVENUE NEW YORK, NEW YORK 10024-1998 PHONE: 212-873-6600 FAX: 212-595-6498  http://www.goddard.org

GODDARD  NEIGHBORHOOD  CENTER  1901-1959  ■  RIVERSIDE  COMMUNITY  HOUSE  1889-1959
PIONEER  YOUTH  OF  AMERICA  ■  CHILD  STUDY  ASSOCIATION  OF  AMERICA/CAMP  WEL-MET

**EXHIBIT B: Purported Resignation Letter (10/11/07)**

# JOHN C. KLOTZ

ATTORNEY AND COUNSELOR AT LAW

EMPIRE STATE BUILDING, 350 FIFTH AVENUE, SUITE 4810, NEW YORK, NY 10118

INTAKE
U.S.E.E.O.C.
33 Whitehall Street, 5th Floor
New York, NY 10004

Re:    JOSE ROBLES v.
       GODDARD RIVERSIDE COMMUNITY CENTER
       and STEPHAN RUSSO

Dear Sirs and Mesdames:

Enclosed for filing is an original and four (4)  copies of a complaint on behalf of JOSE ROBLES
against the respondents referenced above.

Kindly direct all communications in this matter to the undersigned. This is particularly important
since the respondents are seeking summary eviction of Mr. Robles from his home which he has
occupied as an incident of his employment.

Sincerely yours,

JOHN C. KLOTZ
350 Fifth Avenue, Suite 4810
New York, New York 10118-4810
(212) 630-2600

encl

---

TELECOMMUNICATIONS:        TELEPHONE:  (212) 630-2600          E-MAIL:  johnklotz@johnklotz.com
                           FAX:  (718) 543-8244              HTTP://www.johnklotz.com
                                 (NOT FOR SERVICE)

**EXHIBIT C: Complaint to EEOC (Age Discrimination)**                                    **C-1**

Nov-27-07    12:00pm    From-                                    T-644    P.005/005    F-439

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| New York State Division of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.)<br>JOSE ROBLES | | Date of Birth<br>04/23/1945 |
|---|---|---|
| Street Address<br>595 Columbus Ave., | City, State and ZIP Code<br>New York, New York 10024 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name<br>Goddard Riverside Community Center | No. Employees, Members<br>200 | Phone No. with Area Code<br>212-873-6600 |
|---|---|---|
| Street Address<br>593 Columbus Ave., | City, State and ZIP Code<br>New York, New York 10024 | |
| Name<br>Stephan Russo | No. Employees, Members<br>200 | Phone No. with Area Code<br>212-873-6600 |
| Street Address<br>593 Columbus Ave., | City, State and ZIP Code<br>New York, New York 10024 | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.) | Earliest                    Latest<br>October 11, 2007<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**SEE ATTACHED**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>_Jose Robles_ |
| November 30 2007      _Jose Robles_<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) November 30, 2007<br>JOHN C. KLOTZ Notary Public, State of New York<br>No. 02KL5048350 Qualified in Bronx County<br>Commission Expires August 21, 2009 |

**EXHIBIT C: Complaint to EEOC (Age Discrimination)**                    **C-2**

## ATTACHMENT

1, My date of birth April 23, 1945 and I am presently 62 years of age.

2. I am/was employed by Goddard-Riverside Community Center ("GRCC") as superintendent of the senior citizen housing located at 595 Columbus Ave. for 21 years. Executive Director of GRCC, Stephan Russo.

3. On October 11, 2007, Mr. Russo demanded my resignation. He delivered to me a letter falsely claiming that I had resigned and demanding that I sign it. A copy of that letter is annexed..

4. Because of my seniority at GRCC, if I was discharged without cause I was entitled to 13 weeks pay. The letter offered me no such severance. In addition, as a senior employee, I am entitled to 12% annual pension contribution. Any successor would be entitled to no contribution his first year and 6% in each year thereafter. By seeking to replace me with a newer, younger employer, GRCC is seeking to save many thousands of dollars.

5. This discharge if upheld will be an economic catastrophe for me. I am 62 years of age and will be virtually unemployable if forced to seek work with this discharge hanging over my head. In four years I will be eligible for Social Security, but the amount of my Social Security pension will be dramatically reduced because of potentially four (4) years of unemployment.

6. I have also received a "Cobra" notice concerning cancellation my health insurance. I will be forced to pay many thousands of dollars a year for medical coverage, I will not be eligible for Medicare until I reach retirement age.

7. There is a pattern of discharge by GRCC and Mr. Russo of senior employees. At least three individuals over the age of forty were discharged and not offered other opportunities for other openings which were filled with younger workers.

8. I believe that I have been discriminated against because of age and will be replaced by a younger individual who will be entitled to less than I am from GRCC in terms of wages and benefits.

9. I believe that Mr. Russo, Executive Director of GRCC, personally, and individually, has made the decision to discharge me.



# GODDARD RIVERSIDE
# COMMUNITY CENTER

October 11, 2007

Jose Robles
Superintendent
Goddard Riverside Community Center
Phelps House
595 Columbus Avenue
New York, NY 10024

Dear Jose:

As we discussed, I accept your resignation effective October 11, 2007. The agency will continue your salary through December 15, 2007. You will be paid for any remaining vacation days earned through that date. You also waive and release the Agency from any and all claims, proceedings and suits arising out of or relating to your employment here and termination thereof.

Please sign, date and return a copy of this letter to indicate your agreement to the foregoing.

Thank you for the services you have performed as the Superintendent of Phelps House.

Sincerely,

Stephan Russo
Executive Director

AGREED:

_____

Jose Robles

Dated: October,   2007



GODDARD   NEIGHBORHOOD   CENTER   1901-1959   ■   RIVERSIDE   COMMUNITY   HOUSE   1889-1959
PIONEER   YOUTH   OF   AMERICA   ■   CHILD   STUDY   ASSOCIATION   OF   AMERICA/CAMP   WEL-MET



**EXHIBIT C: Complaint to EEOC (Age Discrimination)**        **C-4**

# JOHN C. KLOTZ
ATTORNEY AND COUNSELOR AT LAW

EMPIRE STATE BUILDING, 350 FIFTH AVENUE, SUITE 4810, NEW YORK, NY 10118

INTAKE
U.S.E.E.O.C.
33 Whitehall Street, 5th Floor
New York, NY 10004

Re:    JOSE ROBLES v.
       GODDARD RIVERSIDE COMMUNITY CENTER
       and STEPHAN RUSSO
       Charge No. 520-2008-00652

Dear Sirs and Mesdames:

Enclosed for filing is an original and four (4) copies of am amended charge form of JOSE ROBLES against the respondents referenced above.

Kindly direct all communications in this matter to the undersigned. This is particularly important since the respondents are seeking summary eviction of Mr. Robles from his home which he has occupied as an incident of his employment.

Sincerely yours,

JOHN C. KLOTZ
350 Fifth Avenue, Suite 4810
New York, New York 10118-4810
(212) 630-2600

encl

TELECOMMUNICATIONS:    TELEPHONE: (212) 630-2600    E-MAIL: johnklotz@johnklotz.com
                      FAX: (718) 543-8244    HTTP: //www.johnklotz.com
                      (NOT FOR SERVICE)

**EXHIBIT D: Amended EEOC Complaint (adding racial discrimination)**

Nov-27-07    12:00pm   From-                                    T-644   P.005/005   F-439

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form. **AMENDED** | ☐ FEPA<br>☒ EEOC | **520-2008-00652** |

| New York State Division of Human Rights | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)*<br>**JOSE ROBLES** | | | Date of Birth<br>**04/23/1945** |
|---|---|---|---|
| Street Address<br>**595 Columbus Ave.,** | City, State and ZIP Code<br>**New York, New York 10024** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two are named, list under PARTICULARS below.*)

| Name<br>**Goddard Riverside Community Center** | No. Employees, Members<br>**200** | Phone No. with Area Code<br>**212-873-6600** |
|---|---|---|
| Street Address<br>**593 Columbus Ave.,** | City, State and ZIP Code<br>**New York, New York 10024** | |

| Name<br>**Stephan Russo** | No. Employees, Members<br>**200** | Phone No. with Area Code<br>**212-873-6600** |
|---|---|---|
| Street Address<br>**593 Columbus Ave.,** | City, State and ZIP Code<br>**New York, New York 10024** | |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☐ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER (*Specify below.*)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                     Latest

**October 11, 2007**

☐ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s).*):

See Attachment amending and supplementing Charges

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct.<br><br>**January 2, 2008**          *Jose Robles*<br>Date          Charging Party Signature | *Jose Robles*<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) January 2, 2008<br><br>JOHN C. KLOTZ, Notary Public, State of New York<br>No. 02KL5048350, Qualified in Bronx County, Com. Exp. 08/21/2009 |

**EXHIBIT D: Amended EEOC Complaint (adding racial discrimination)**

**AMENDED ATTACHMENT**

**AGE DISCRIMINATION**

1, My date of birth April 23, 1945 and I am presently 62 years of age.

2. I am/was employed by Goddard-Riverside Community Center ("GRCC) as superintendent of the senior citizen housing located at 595 Columbus Ave. for 21 years. Executive Director of GRCC, Stephan Russo.

3. On October 11, 2007, Mr. Russo demanded my resignation. He delivered to me a letter falsely claiming that I had resigned and demanding that I sign it. A copy of that letter is annexed..

4. Because of my seniority at GRCC, if I was discharged without cause I was entitled to 13 weeks pay. The letter offered me no such severance. In addition, as a senior employee, I am entitled to 12% annual pension contribution. Any successor would be entitled to no contribution his first year and 6% in each year thereafter. By seeking to replace me with a newer, younger employer, GRCC is seeking to save many thousands of dollars.

5. This discharge if upheld will be an economic catastrophe for me. I am 62 years of age and will be virtually unemployable if forced to seek work with this discharge hanging over my head. In four years I will be eligible for Social Security, but the amount of my Social Security pension will be dramatically reduced because of potentially four (4) years of unemployment.

6. I have also received a "Cobra" notice concerning cancellation my health insurance. I will be forced to pay many thousands of dollars a year for medical coverage, I will not be eligible for Medicare until I reach retirement age.

7. There is a pattern of discharge by GRCC and Mr. Russo of senior employees. At least three individuals over the age of forty were discharged and not offered other opportunities for other openings which were filled with younger workers.

8. I believe that I have been discriminated against because of age and will be replaced by a younger individual who will be entitled to less than I am from GRCC in terms of wages and benefits.

9. I believe that Mr. Russo, Executive Director of GRCC, personally, and individually, has made the decision to discharge me.

**EXHIBIT D: Amended EEOC Complaint (adding racial discrimination)**

**NATIONAL ORIGIN AND COLOR DISCRIMINATION**

10. In early October, I had a discussion with Mr. Russo and others about missing alcohol from a "book storage room" which was under the control of the GRCC's Development Office. Prior to that time I was totally uninformed about the practice of the Development Office storing liquor there.

11. When Mr. Russo voiced concern about the missing alcohol, I pointed out to him that primary responsibility for the book storage room was the Development Office. I suggested because the amount missing was significant and he was concerned, that he should call the police. He became agitated with me over this suggestion. It was subsequent to that conversation that, I was discharged.

12. At least one white GRCC employee in the Development Office has a reputation for being a potential alcoholic and I have heard that on at least one occasion this August was clearly inebriated at a GRCC social event.

12. I further learned after I was discharged that at the "book sorting" events in the "book storage room," conducted by the predominantly white members of the Development Office, a great deal of alcohol was consumed.

13. I believe that one motivation for my firing was to protect white employees and lay the blame on the nearest available minority member since the Development Office and the donors it solicits are predominantly white.

14. At no time, under any circumstance did I ever remove alcohol from the book storage room and because it was under the primary control of the Development Office, I had no supervisory authority for the conduct of the Development Office in the book storage room.

15. I further believed that Mr. Russo was upset with me by my suggestion that we ask the police to investigate the missing alcohol because he wanted to "keep it in the family." His idea of keeping it in the family was to discharge me.

_____
JOSE ROBLES

Sworn to before me July 2, 2008

_____
**JOHN C. KLOTZ**
Notary Public, State of New York
No. 02KL5048350
Qualified in Bronx County
Commission Expires August 21, 2009

**EXHIBIT D: Amended EEOC Complaint (adding racial discrimination)**

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Jose Robles**<br>**595 Columbus Avenue**<br>**New York, NY 10024** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2008-00652** | **Hazel C. Stewart,**<br>**Supervisory Investigator** | **(212) 336-3776** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

☐   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☒   The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*Spencer H. Lewis, Jr.,*
**Director**

3-5-08
*(Date Mailed)*

cc:   **GODDARD RIVERSIDE COMMUNITY CENTER**
**Director Of Personnel**
**593 Colombus Avenue**
**New York, NY 10024**

**John C. Klotz, Esq.**
**3350 Fifth Avenue, Suite 4810**
**New York, NY 10118**

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Jose Robles**<br>**595 Columbus Avenue**<br>**New York, NY 10024** | From:  **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2008-00652** | **Hazel C. Stewart,**<br>**Supervisory Investigator** | **(212) 336-3776** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Spencer H. Lewis, Jr.*                    3-5-08

Enclosures(s)                    **Spencer H. Lewis, Jr.,**                    *(Date Mailed)*
**Director**

cc:    **GODDARD RIVERSIDE COMMUNITY CENTER**            John C. Klotz, Esq.
**Director Of Personnel**                    3350 Fifth Avenue, Suite 4810
**593 Colombus Avenue**                    New York, NY 10118
**New York, NY 10024**

**EXHIBIT E: EEOC Right to Sue Letter**                    **E-2**

CIVIL COURT OF THE CITY OF NEW YORK

County of NY

Date 1/7/08     Part H

Index No. L&T: 96813/07

Page ____ of ____

Hon. D Cohen

**STIPULATION OF SETTLEMENT**

*The parties understand that each party has the right to a trial, the right to see a Judge at any time and the right not to enter into a stipulation of settlement. However, after review of all the issues, the parties agree that they do not want to go to trial and instead agree to the following stipulation in settlement of the issues in this matter.*

Phelps Houses

Petitioner(s),

against

Robles

Respondent(s)

| Party (please print) | Added/Amended or Deleted | Appearance | No Appearance | No Answer |
|---|---|---|---|---|
| Petitioner  Phelps Houses | | ✓ | | |
| Respondent 1  Jose Robles | | ✓ | | |
| Respondent 2 | | | | |
| Respondent 3 | | | | |

Respondent's motion withdrawn with prejudice: Final judgment possession in favor of petitioner, issuance of warrant forthwith execution stayed thru 3/15/08 for respondent to vacate and surrender the premises or warrant shall execute on service of a Marshal's notice which may be pre-served. Time is of the essence to this agreement and respondent shall seek no further stays from this Court. Respondent reserves his civil claims and his right to pursue same only in forums other than this Court. Petitioner reserves any and all defenses and or counterclaims thereto.

SO ORDERED

DAVID B. COHEN
JUDGE, HOUSING COURT

CIV-LT-30 page 1 (Revised 4/97)

**EXHIBIT F: Housing Court Stipulation**